UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS

---

| | | |
|---|---|---|
| SOUTHERN PACIFIC HOLDING CORPORATION, | : | |
| | : | |
| Petitioner, | : | __ Civ. 4:19-MC-657 |
| | : | |
| -against- | : | **PETITION TO RECOGNIZE AND ENFORCE FOREIGN ARBITRAL AWARD** |
| | : | |
| GULF COAST CRUDE GATHERING & MARKETING, LLC | : | |
| Respondent. | : | |

---

SOUTHERN PACIFIC HOLDING CORPORATION ("Southern Pacific" or "Petitioner"), by and through its attorneys, Gordon Rees Scully Mansukhani, LLP, for its Petition to Recognize and Enforce Foreign Arbitration Award against GULF COAST CRUDE GATHERING & MARKETING, LLC ("Gulf Coast Crude" or "Respondent'), alleges as follows:

## INTRODUCTION

1.  Southern Pacific is commencing this proceeding to recognize and enforce two foreign arbitration awards rendered in London, England (the "Awards") and to have judgment entered thereon, pursuant to Section 207 of the Federal Arbitration Act, 9 U.S.C. § 207. A True and correct copy of the Partial Final Arbitration Award, dated November 5, 2018 is attached hereto as Exhibit A.  A true and correct copy of the Final Arbitration Award on Costs, dated February 4, 2019 is attached as Exhibit B. The Partial Final Arbitration Award and Final Arbitration Award on Costs are collectively referred to herein as the "Awards".

## PARTIES

2.      Southern Pacific is a corporation that is incorporated in the Republic of Panama and has its principal place of business in The City of Panama, Republic of Panama. Southern Pacific is the Owner of a motor vessel known as M/V BLACK DUCK which it chartered to Gulf Coast Crude.

3.      Upon information and belief, Gulf Coast Crude is a limited liability company formed under the laws of the State of Texas and does business in Houston, Texas. Upon information and belief, Gulf Coast Crude has at least one member: Gulf Coast Asphalt Company LLC is a limited liability company formed under the laws of the State of Alabama.  Upon information and belief, Gulf Coast Asphalt Company has at least one member which is a citizen of the State of Texas. Gulf Coast Crude is a charterer of vessels and charted the M/V BLACK DUCK from Southern Pacific.

## JURISDICTION AND VENUE

4.      This Court has original jurisdiction over this action pursuant to 9 U.S.C. § 203, in that this is a civil action seeking recognition and enforcement of two awards rendered in an arbitration falling under the Convention on the Enforcement and Recognition of Foreign Arbitral Awards (the "New York Convention").

5.      Venue is proper in this judicial district pursuant to 9 U.S.C. § 204 because the parties' arbitration agreement and the enforcement of the arbitration awards fall under the terms of the New York Convention, and a proceeding relating to the parties' dispute could have been brought in Houston, Texas if not for the parties' agreement to arbitrate the dispute in London.

## FACTS

6.      Attached as Exhibit C is a true and correct copy of the Time Charter Party containing the arbitration agreement between the parties.

7. Clause 46 of the Time Charter Party containing the arbitration agreement provides as follows:

(a) This charter shall be construed and the relations between the parties determined in accordance with the laws of England.

(b) All disputes arising out of this charter shall be referred to Arbitration in London in accordance with the Arbitration Act 1996 (or any re-enactment or modification thereof for the time being in force) subject to the following appointment procedure:

(i) The Parties shall jointly appoint a sole arbitrator not later than 28 days after service of a request in writing by either party to do so.

(ii) If the parties are unable or unwilling to agree the appointment [sic] of a sole arbitration accordance with (i) then each party shall appoint one arbitrator, in any event not later than 14 days after receipt of a further request in writing by either party to do so. The two arbitrators so appointed shall appoint a third arbitrator before any substantive hearing or forthwith if they cannot agree on a matter relating to the arbitration.

(iii) If a party fails to appoint an arbitrator within the time specified in (ii) (the Party in Default) the party who has duly appointed his arbitrator shall give notice in writing to the Party in Default that he proposes to appoint his arbitrator to act as sole arbitrator.

(iv) If the Party in Default does not, within 7 days of the notice given pursuant to (iii) make The [sic] required appointment and notify the other party that he has done so the other party may appoint his arbitrator as sole arbitrator whose award shall be binding on both parties as if he had been so appointed by agreement.

(v) Any Award of the arbitrator(s) shall be final and binding and not subject to appeal.

(vi) For the purposes of this <u>clause 46(b) any</u> requests or notices in writing shall be sent by fax, e-mail or telex and shall be deemed received on the day of transmission.

(c) It shall be condition precedent to the right of any party to a stay of any legal proceedings in which maritime property has been, or may be, arrested in connection with a dispute under this charter, that that [sic] party furnishes to the other party security to which that other party would have been entitled in such legal proceeding in the absence of a stay.

8. After entering into the Time Charter Party on November 11, 2015, disputes arose under the Time Charter Party between Southern Pacific and Gulf Coast Crude. Specifically, Southern Pacific alleged that the M/V Black Duck that was chartered by Gulf Coast Crude pursuant to the Time Charter Party was delivered on June 2, 2017 and thereafter withdrawn on July 11, 2017 because of Gulf Coast Crude's failure to pay the contractually agreed hire on time under the terms of the Time Charter Party.

9. Pursuant to Clause 46 of the Time Charter Party, Southern Pacific provided a Notice of Arbitration to Gulf Coast Crude on September 5, 2017, and requested that Gulf Coast Crude agree to the appointment of a sole arbitrator. Gulf Coast Crude did not respond to the request to agree a sole arbitrator.

10. On October 4, 2017, Southern Pacific provided notice to Gulf Coast Crude that, in absence of Gulf Coast Crude's response to the September 5, 2017 Notice of Arbitration, Southern Pacific appointed Mr. Michael Baker-Harber as arbitrator pursuant to Clause 46(b)(ii) of the Time Charter Party. Southern Pacific notified Mr. Baker-Harber of his appointment and Mr. Baker-Harber accepted on that same date.

11. On October 16, 2017, Southern Pacific received notice from English solicitors Messrs HFW that they were instructed for and on behalf of Gulf Coast Crude and had appointed Mr. Simon Gault as arbitrator on behalf of Gulf Coast Crude.

12. The correspondence evidencing the timeline set forth in Paragraphs 8 – 12 above is attached hereto as Exhibit D.

13. Upon information and belief, the two party-appointed arbitrators then appointed Mr. Jonathan Elvey as the third arbitrator in accordance with the arbitration agreement.

14. Upon information and belief, Southern Pacific and Gulf Coast Crude agreed to a hearing in London, England on October 16 – 17, 2018.

15. Gulf Coast Crude ultimately did not make an appearance at the arbitration hearing and the three arbitrators proceeded under Section 41(4) of the Arbitration Act 1996, that confers power on the arbitrators to make an award if a party fails to attend or be represented at an oral hearing of which due notice was given without showing sufficient cause. See, Exhibit A, Paragraph 13.

16. The arbitrators set forth the history of Gulf Coast Crude's participation in the arbitration and the arbitrators' efforts to provide notice of the hearing in the Partial Final Award, Exhibit A, Paragraphs 14 – 16:

> 14. The history of the Charterers' [Gulf Coast Crude] participation is this:
>
>> a. After the Owners [Southern Pacific] commenced arbitration proceedings in September 2017 the Charterers appointed London solicitors (HFW) to represent them. They appointed an arbitrator (Mr Gault).
>>
>> b. Full pleadings were served and exchanged. The Charterers served defence submissions in response to the claim submissions, and a rejoinder in response to the reply.
>>
>> c. Full LMAA Questionnaires were exchanged. The Charterers' Questionnaire proposed dates for disclosure and witness statements and for a hearing – where the Charterers envisaged calling Mr Arthur Brass to give evidence of the alleged agreement to vary the charterparty hire provisions.
>>
>> d. The hearing was fixed with the involvement of both parties.
>>
>> e. On 10 September this year, 2018, HFW advised us that they were no longer instructed to represent the Charterers in these proceedings. They told us to correspond henceforth with Mr

>Brass and gave us contact details for him at the Charterers' address. No explanation for this development was given.

>15. From that date to the eve of the hearing we sent the Charterers a series of messages, addressed to them or jointly to the parties as the case dictated:

>>a. asking them to provide us with details of any new legal team of representatives, or confirming that Mr Brass or his colleagues would handle matters themselves;

>>b. setting out full details of where, when and how the hearing would take place;

>>c. urging them to participate in the final preparatory steps for it – disclosure, witness statements, the compilation of bundles, and skeleton arguments; and

>>d. inviting them to contact us to discuss or clarify any point they wished.

>16. We received no response to any of our messages, either in writing or by telephone. The Charterers chose to stay completely silent.

17. The arbitration hearing was held on October 16, 2017 and the arbitrators confirmed the procedure in the Partial Final Arbitration Award, Exhibit A, Paragraph 17:

>17. At the beginning of the hearing we said that we would deal with the reference openly, fairly and objectively in the absence of the Charterers. We did so. The Owners appeared with Counsel and solicitors and tendered two witnesses for oral evidence. We tested their case on the basis of their written pleadings, their skeleton argument, their submissions at the hearing, and their evidence, in conjunction with the Charterers' pleadings and the documents to which they referred (which were in the bundles prepared the Owners for the hearing). We would have welcomed the participation of the Charterers, however late in the day. We would have welcomed evidence, cross-examination and full argument on both sides. But the Charterers chose otherwise. Nevertheless, Counsel for the Owners

went through all the relevant documents and arguments as if (as he put it) the Charterers were there.

18. After the hearing the arbitrators found in favor of Southern Pacific and on November 5, 2018 published a Partial Final Arbitration Award in the following terms *inter alia*:

> (A) WE DECLARE that the vessel was validly withdrawn for non-payment of hire.
>
> (B) WE AWARD the Owners the following sums:
>
>> i. USD 314,656.25 for hire;
>>
>> ii. USD 1,601.88 for miscellaneous expenses;
>>
>> iii. USD 16,616.88 for bunkers;
>>
>> iv. Interest on these sums in accordance with paragraph C below.
>
> (C) WE ALSO AWARD AND ADJUDGE that the Charterers pay to the Owners interest as follows:
>
>> i. On the hire and miscellaneous expenses due on 14 June 2017, interest from 15 June 2017 until 27 June 2017;
>>
>> ii. On the hire and miscellaneous expenses due on 30 June 2017, interest from 1 July 2017 until payment is made;
>> 29
>>
>> iii. On the hire and miscellaneous expenses due on 2 July 2017, interest from 3 July 2017 until payment is made;
>>
>> iv. On the balance of account of USD 16,616.88 for bunkers, interest from 12 July 2017 until payment is made;
>>
>> at (in all four cases) a rate per annum which shall be 1% above the U.S. Prime Interest Rate as published by the Chase Manhattan Bank in New York at 12.00 New York time on the due date or, if no such interest rate is published on that day, on the next preceding day on which such a rate was so published, computed on the basis of a 360 day year of twelve 30-day months, compounded semi-annually.
>
> (D) WE RESERVE all other issues, including all issues of costs.

Exhibit A, p. 28 – 29.

    19.    Having previously reserved the issue of costs, the arbitrators on February 4, 2019 published a Final Arbitration Award on Costs (attached as Exhibit B), as follows:

> A. We award the Owners [Southern Pacific] the following sums:
>
>> 1. 80% of their invoiced costs, i.e. GBP 113,805.86;
>>
>> 2. GBP 29,000, i.e. reimbursement of the cost of our liability award;
>>
>> 3. interest as per paragraph B below;
>>
>> 4. their costs of this assessment, ie GBP 1,590.
>
> B. As to interest, and pursuant to Section 49 of the Arbitration Act 1996, we award Owners the following sums:
>
>> 1. on the sum awarded under paragraph A.1, interest of 4.5% (four and a half per cent), on a compound basis at three-monthly rests, from a start date of March 16 2018 (being the approximate mid-point of the fee invoices) until payment by the Charterers of the said sum;
>>
>> 2. on the sum awarded under paragraph A.2, interest on the same basis, with a start date of 13 November 2018, being the date when the Owners paid for our first award.
>>
>> 3. On the sum awarded under paragraph A.4, interest on the same basis, from the date of this Award.
>
> C. WE FURTHER AWARD AND ADJUDGE that the Charterers shall bear and pay the cost of this Award in the sum of £3,850. PROVIDED that if in the first instance the Owners shall have paid any part of the cost of this Award then they shall be entitled to immediate reimbursement by the Charterers together with interest at the same rate and on the same basis as paragraph B.1 above, from the date of payment to the date of reimbursement

    20.    The Awards have not been set aside, varied or suspended by a competent authority of the country in which, or under the law of which, the Awards were made; nor have the Awards been challenged or appealed.

21. As at the date of this Petition, Gulf Coast Crude has failed to comply with the Awards in whole or in part.

22. Pursuant to 9 U.S.C. § 207, Southern Pacific has brought this action within three years after the Partial Final Arbitration Award was made on November 5, 2018 and the Final Arbitration Award on Costs was made on February 4, 2019.

23. No grounds exist for this Court to refuse recognition and enforcement of the Awards.

## COUNT ONE
## (RECOGNIZE AND ENFORCE ARBITRATION AWARD UNDER THE FEDERAL ARBITRATION ACT)

24. Southern Pacific repeats and realleges paragraphs 1 through 23 hereof, as if fully set forth within.

25. The Federal Arbitration Act provides that the "court shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention." 9 U.S.C. § 207.

26. None of the grounds available for refusal or deferral of recognition or enforcement of an award specified in the New York Convention are applicable to the Final Award.

27. Therefore, pursuant to 9 U.S.C. § 207, Southern Pacific requests that this Court does recognize and enforce the Partial Final Arbitration Award and Final Arbitration Award on Costs and enter judgment in favor of Southern Pacific and against Gulf Coast Crude in the amount of the Awards of $332,875.01 and GBP 148,245.86, respectively.

28. Under the terms of the Partial Final Arbitration Award, Southern Pacific is entitled to interest as set forth on the amount of the awarded sums, running as set forth in section C of Paragraph 18 above, which, as of March 1, 2019 has accrued in an amount of $28,938.71, calculated as follows:

    (i)    Interest on USD 207,625 at a rate of 5% per annum compounded semi-annually from 1 July 2017.

    (ii)    Interest on USD 107,031.25 at a rate of 5.25% per annum compounded semi-annually from 3 July 2017.

    (iii)    Interest on USD 1,250 at a rate of 5% per annum compounded semi-annually from 15 June to 27 June.

    (iv)    Interest on USD 16,616.88 at a rate of 5.25% per annum compounded semi-annually from 12 July 2017.

    (v)    Interest on USD 351.88 at a rate of 5.25% per annum compounded semi-annually from 3 July 2017.

29.    Under the terms of the Final Arbitration Award on Costs, Southern Pacific is entitled to the costs of the arbitration, including attorneys' fees, in the amount of GBP 148,245.86, plus interest on the awarded sums which as of March 1, 2019 has accrued in an amount of GBP 5,359.21, calculated as follows:

    (i)    Interest on GBP 113,805.86 at a rate of 4.5% per annum compounded quarterly from 16 March 2018.

    (ii)    Interest on GBP 29,000 at a rate of 4.5% per annum compounded quarterly from 13 November 2018.

    (iii)    Interest on GBP 1,590 at a rate of 4.5% per annum compounded quarterly from 4 February 2019.

    (iv)    Interest on GBP 3,850 at a rate of 4.5% per annum compounded quarterly from 18 February 2019.

30.    By reason of the foregoing, the court should issue an order recognizing and enforcing the Awards and direct that judgment be entered thereon.

**WHEREFORE**, Southern Pacific Holding Corporation respectfully requests that this Court:

1.    Issues an order pursuant to 9 U.S.C. § 207 recognizing and enforcing the Awards and entering a judgment in favor of Southern Pacific and against Gulf Coast Crude in accordance with the Awards.

2. Awards interest, post-award interest, and costs.

3. Awards Southern Pacific such other and further relief as this Court deems just and proper.

Dated:  March 1, 2019

Respectfully submitted,

**GORDON REES SCULLY MANSUKHANI LLP**

*/s/ David S. Bland*
DAVID S. BLAND (TX Bar #00789021)
909 Poydras Street, Suite 1860
New Orleans, LA 70112
Telephone:	(504) 528-3088
Facsimile:	(504) 586-3419
Email: dbland@grsm.com

*Attorney for Southern Pacific Holding Corporation*

Please issue Citation and Service:

Gulf Coast Crude Gathering & Marketing, LLC
Through its Registered Agent for Service of Process
Joseph Mattingly Jr
1990 Post Oak Blvd., Suite 2400
Houston, TX 77046 USA